# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | |
|---|---|
| **JOHN MAGEE, III** | **CIVIL ACTION NO. 04-2246-LC** |
| **VS.** | **SECTION P** |
| **JOHN ASHCROFT, ET AL.** | **JUDGE MINALDI** |
| | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is the *pro se* civil rights complaint[1] filed in *forma pauperis* by plaintiff John Magee, III, on October 29, 2004. Plaintiff, who was convicted on November 14, 2002, of "firearm violations," is a prisoner in the custody of the Federal Bureau of Prisons (BOP) and is currently incarcerated at the Federal Corrections Institute–Oakdale (FCIO) in Oakdale, Louisiana, where he is serving an eight year sentence. [Doc. #1, p. 3]. Plaintiff has sued the following defendants: John Ashcroft; U.S. Attorney General Alberto Gonzales; FCIO Warden Joe Young; FCIO Officer/Physician Lt. Spencer Smith; FCIO Clinical Director Dr. Joel Alexander; FCIO Physician Assistants Frias and Sherwood; FCIO Medical Administrator Stone; Drs. Freedman, Hanley, and Younes; Freedman Cardiology Corporation; Rapides Hospital; and, Christus St. Frances Cabrini Hospital.[2]

This matter has been referred to the undersigned for review, report, and recommendation pursuant to the provisions of 28 U.S.C. § 636 and the standing orders of the court.

---

[1] Because it alleges civil rights violations by federal defendants, the action is construed as one brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

[2] Defendants Gonzales, Frias, Sherwood, Stone, Freedman Cardiology Corp., Rapides Hospital, and St. Frances Cabrini Hospital were added as parties to this matter by plaintiff in his amended complaint filed 7/8/05.

## **STATEMENT OF THE CASE**

In his original complaint, plaintiff characterized his claims as "gross negligence resulting to physical and mental torture, irreparable physical damage, and endangering the life and safety of a person." More specifically, plaintiff claimed that during his "prison commitment medical examination," plaintiff was told that he had a "heart condition (slow heartbeat)." [Doc. #1, p. 3]. Thereafter, plaintiff stated that he was subjected to numerous tests conducted by FCIO physicians, and cardiologists from an outside medical facility, namely Drs. Freedman, Hanley, and Younes. Plaintiff also claimed that the defendants prescribed an "array of medication," from which plaintiff immediately experienced "episodes" described by plaintiff as shortness of breath, dizziness, tiredness, chest pains, sudden fast heart palpitations, weakness, and debilitation. [Doc. #1, pp. 3 & 4]. Plaintiff stated that he immediately notified the defendants about these problems, and that he continued to suffer from the episodes for a few weeks. At that point, plaintiff claimed that his condition grew intolerable, and the defendants changed one of his medications. Nevertheless, plaintiff stated that the episodes continued.

Thereafter (although the exact time frame is not specified), plaintiff stated that he was told that his heart condition had escalated to a critical level. Plaintiff claimed that rather than taking immediate action, the defendants simply continued to administer his medication, further aggravating his pain and suffering. It was some five months following this time period that defendants rushed plaintiff to the St. Frances Cabrini Hospital for urgent medical treatment. [Doc. #1, p. 4]. Plaintiff stated that Dr. Younes (the physician who had treated plaintiff at the outside clinic) recommended that plaintiff have "heart surgery." Plaintiff was transferred to Rapides Hospital for this procedure. Plaintiff claimed that upon being transferred, he was informed that the surgery would involve the placement of a pace maker, which plaintiff stated he consented to under duress. Dr. Younes performed the procedure, and plaintiff was sent back to

FCIO the day after the surgery.

Plaintiff alleged that immediately following the surgery, he began to experience the "episodes" again but was advised by the defendants that it was normal as "plaintiff's heart was adjusting to the pace maker." [Doc. #1, p. 6]. Thereafter, plaintiff stated that the pace maker dislodged and started to come out of his chest, such that the brand name and serial number of the pace maker were visible through plaintiff's chest. Plaintiff also claimed that his surgical incision "opened up" and got infected. This caused plaintiff to develop insomnia as he feared that if he closed his eyes, he might not wake up. Plaintiff alleged that he still suffers from the insomnia. Plaintiff stated that for weeks, the only action taken by the defendants to help him was the administering of antibiotics and Motrin. Plaintiff claimed that his suffering continued for weeks, and that a portion of the pace maker protruded from his chest, and the surgical site was infected, swollen, and painful. Plaintiff also claimed that his pain and suffering was aggravated by defendant Smith's taunting, which consisted of the following: "'I can't read your f—ing mind!', I am not your wife!', you f—ing inmates are already getting free medical attention and care, and still whine like f—ing babies.'" [Doc. #1, p. 6].

Plaintiff summed up at least part of his theory of liability as follows: "Plaintiff believes that Defendant's complacency, ignorance and total disregard for human life by giving the Plaintiff a wrong medication (Labetolol) of which side effects aggravated Plaintiff's heart condition would have not created the urgency of a pace maker surgery if Defendants have done diligently their duty as custodians of the Plaintiff." [Doc. #1, p. 7]. Plaintiff continued by alleging that the defendants compromised plaintiff's life when they chose Dr. Younes to perform his surgery rather than allowing plaintiff to chose a more qualified physician. Plaintiff stated that the defendants intentionally and willfully subjected him to mental torture and physical pain by denying him urgent care when the pace maker came out of his chest and became infected.

3

Plaintiff further claimed that defendants intentionally and willfully subjected him to mental torture and physical pain via the aforementioned taunting every time that he would request medical attention. Plaintiff alleged that his life has been forever damaged, that he still experiences the "episodes" every "now and then, " and that the "suffering and mental torture continues." [Doc. #1, p. 9].

Despite the substantial amount of information contained in plaintiff's original complaint, it nevertheless lacked specific information to support his allegations that his constitutional rights had been violated by the individuals named as defendants. Thus, this court issued a memorandum order [Doc. #6], directing plaintiff to amend his complaint. Among other things, plaintiff was advised that his complaint was devoid of any allegations that indicated that Drs. Freedman, Hanley, and Younes were acting under the color of state or federal law as his pleadings suggested that they were employed at facilities separate and apart from the correctional facility. Plaintiff was also informed that *Bivens* does not permit suit against federal agencies or government officers in their official capacities, and that under *Bivens* supervisory officials cannot be held vicariously liable solely on the basis of their employer-employee relationship with an alleged tortfeasor because there is no doctrine of *respondeat superior* in a *Bivens* action. Further, plaintiff was advised that to the extent that he complained of delayed or inadequate medical care, his pleading failed to set forth a constitutional claim. Plaintiff was also instructed to provide the court with proof that he exhausted his administrative remedies with regard to the claims asserted in this matter.

In response to the court's memorandum order, plaintiff filed an "Answer to Remedy the Deficiencies of Plaintiff's Complaint" [Doc. #10], as well as an amended complaint [Doc. #11]. Via these documents, plaintiff added additional information concerning his claims, and he also provided documents which purportedly showed that he exhausted all of his administrative

4

grievance remedies. The most substantive information acquired by court from the supplemental documents was a clearer time-frame pertaining to plaintiff's allegations herein. More specifically, plaintiff was diagnosed with the "slow heart beat" in January or February 2003. In August 2003, plaintiff filed a grievance complaining about his medical care, including his allegation that he had been prescribed incorrect medication. Plaintiff also stated that he had been subjected to threats and hostile behavior from members of the health services staff. Plaintiff apparently received an unfavorable response from the warden to the grievance, and filed an appeal on September 24, 2003. On November 11, 2003, the regional director responded to the appeal, wherein he concurred with the findings of the warden. More specifically, the regional director stated that plaintiff's medical history showed that he arrived at FCI Oakdale in January 2003, with a prior history of Bardycardia. It was noted that plaintiff had three cardiac evaluations with the consultant cardiologist, and was given a cardiac stress test and Holter monitor to evaluate his condition. In March 2003, plaintiff's medication was changed, and in July 2003, the cardiologist noted that the new medication had not produced the expected results. The regional director stated that plaintiff was going to have a follow-up appointment with the cardiologist to discuss the results of the Holter monitor as well as any of plaintiff's concerns. Plaintiff was advised that he could appeal the response to the BOP in Washington, D.C. within 30 days from the date of the response. Along with plaintiff's "Answer to Remedy the Deficiencies of Plaintiff's Complaint," he attached such an appeal, dated January 24, 2004. However, plaintiff did not file the BOP's response to the appeal.

In the meantime, plaintiff had surgery on November 24, 2003, during which a pacemaker was placed in his chest. Plaintiff's allegations concerning this surgery and the surgery of March 11, 2004, as well as his medical treatment between the two procedures, are discussed at length above, and form the basis for much of the claims contained in plaintiff's complaint.

As a result of the above, plaintiff seeks a declaratory judgment that the defendants are guilty of "gross negligence resulting to physical and mental torture, irreparable damage, endangering the life and safety of the Plaintiff." [Doc. #1, p. 9]. Plaintiff also requests release from the defendants' custody, into home confinement or a convalescence health center where he can get adequate medical care in an "environment less stressing than the confines of a prison." [Doc. #1, p. 9]. In addition, plaintiff requests that the court issue an order allowing him (or the court) to choose his heart specialists. As damages for his pain and suffering, plaintiff seeks compensatory and punitive damages of $10,000,000.00, against the defendants (although it is not clear if plaintiff seek this amount from each defendant individually, or from the defendants jointly).

## LAW AND ANALYSIS

### I. Failure to Exhaust Administrative Remedies

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, was amended by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes exhaustion of administrative remedies mandatory in prison conditions cases. Section 1997e(a) provides,

> (a) Applicability of Administrative Remedies--No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This is a prison condition case, exactly the type of case which can best be resolved by the prison officials without resort to judicial action. Plaintiff's pleadings and attachments establish that he failed to exhaust administrative remedies before filing this lawsuit as required by 42 U.S.C. §1997e(a). Under current law, plaintiff must exhaust the administrative remedy

6

procedure before proceeding herein. The statute provides for no exceptions.[3] The statute precludes any further action on these claims until plaintiff has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending....[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation...and [b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled – that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

In regard to the exhaustion of plaintiff's claims, it is imperative to separate plaintiff's claims into those occurring prior to his November 24, 2003 surgery, and those occurring subsequent to the surgery. The separation of claims is necessary as plaintiff's grievances do not, and given the date that the grievance and the appeal were filed, cannot, pertain to events occurring post-surgery. More specifically, plaintiff's grievance was filed in August 2003,

---

[3] see also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life</u>, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

months before his November 2003 surgery. The grievance and the required appeal documents filed thereafter, do not raise the claims made by plaintiff in his complaint pertaining to the alleged problems occurring following surgery–specifically, that the incision site became infected and that the pacemaker was coming out of plaintiff's chest. In short, it is clear that plaintiff failed to even attempt to exhaust any available administrative remedies in regard to his post-surgery claims **before** filing his suit in October 2004.

Plaintiff's claims occurring prior to his November 2003 surgery require additional analysis in regard to exhaustion. These claims include plaintiff's allegations about his medical care, including his allegations that he had been prescribed incorrect medication, and that he had been subjected to threats and hostile behavior from members of the health services staff. As to these claims (as well as the other claims advanced by plaintiff in his complaint but not clearly not administratively exhausted), plaintiff had available to him the multi-step procedure set forth in the Bureau of Prison's Administrative Remedy Program. See 28 C.F.R. § 542. The BOP regulations provide "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement . . . if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. In accordance with the BOP's ARP, an inmate shall first attempt informal resolution of his complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. See 28 C.F.R. § 542.13(a). Plaintiff claims that he complied with this requirement and provides a document purporting to evidence compliance. [See Doc. #10, p. 9, BOP Informal Resolution Form, complaining of inadequate medical care on or around July 31, 2003.]

BOP Regulations further provide that if the complaint cannot be resolved informally, the

8

inmate may submit a formal written Administrative Remedy Request to the warden, on a designated form, within twenty days of the event that triggered the inmate's complaint. 28 C.F.R. § 542.15(a). Plaintiff apparently complied with this provision. [See Doc. #10, p. 4]. Further, the regulations provide that in the event the inmate's formal request is denied, the inmate may submit an appeal to the appropriate Regional Director of the BOP. See 28 C.F.R. § 542.15(a). As previously discussed, the Regional Director denied plaintiff's appeal of the warden's response to his grievance. [See Doc. #10, p.6]. Finally, the regulations provide that a negative decision from the Regional Director may in turn be appealed to the General Counsel's Office within thirty days of the date of the Regional Director's decision. Although plaintiff submitted what appears to be an appeal to the General Counsel's Office [Doc. #10], plaintiff failed to provide the General Counsel's response to the appeal or even a date when such response was issued. Assuming that the appeal was actually filed, it is evident from the date on the appeal (1/24/04), that same was filed over two and a half months after the response date (11/4/03). Thus, without a valid reason why he did not timely file the appeal, it is quite probable that his claims in this regard are not technically exhausted. However, giving plaintiff the benefit of the doubt with regard to the exhaustion issue, the court still finds that plaintiff's remaining claims should be dismissed.

## II. Frivolity Review

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous,[4] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28

---

[4] A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

9

U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1). A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss as frivolous a prisoner suit on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under §1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under §1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*, 923 F.Supp. 931, 942-43 (S.D.Tex.1996). A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

As previously discussed, plaintiff was specifically advised that his original complaint was deficient and was ordered to amend that complaint to state a viable claim. His amended complaint (as well as the other documents filed by plaintiff in support of his claims) failed to cure the noted deficiencies. Thus, accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief

may be granted and accordingly, recommends dismissal of the complaint.

**Inadequate Medical Care**

In order to succeed on an inadequate medical care claim, plaintiff must establish the defendants, in each instance, were "deliberately indifferent" to his serious medical condition. It is only this deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia*, 96 S.Ct. 2909 (1976); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.* **A plaintiff's disagreement with the course of treatment offered by the medical staff does not establish that a constitutional violation has occurred**. *See Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)(A disagreement with a

11

doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra.*

In the instant case, the facts alleged in the complaint indicate that plaintiff received continuous medical treatment, including various examinations, prescriptions for medications, and surgery. Plaintiff's allegations, at most, state a disagreement amongst himself and the treating physicians regarding the procedures to treat his medical problems. As previously stated, such claims are insufficient to establish that a constitutional violation has occurred. Accordingly, this court finds that plaintiff's claim for inadequate medical care should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).[5]

---

[5] Although it has already been determined that plaintiff's claims are frivolous, it should be noted that plaintiff's claims against Drs. Younes, Freedman and Hanley would, in all probability, be nevertheless dismissed. Specifically, to obtain relief under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) **a deprivation of that right by a defendant acting under color of state law**. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under the color of state law. *Lugar v. Edmonson Oil Co., Inc.*, 475 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). Purely private conduct, no matter how wrongful, is not within the protective orbit of section 1983. *Shelley v. Kramer*, 334 U.S.1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). In the present case, plaintiff's statement that the referenced physicians were "contracted doctors" is completely unsupported, and otherewise, there is nothing to indicate that the referenced physicians were acting under the color of state law. To the contrary, the Regional Director's response [Doc. #10] to plaintiff's appeal of the warden's denial of his grievance, refers to these physicians as "consultant cardiologists from the community." Thus, it appears that these defendants were employed at facilities separate and apart from the detention facility that plaintiff alleges directly participated in the acts causing the alleged constitutional violation. Therefore, plaintiff's claims against Drs. Younes, Freedman and Hanley lack an arguable basis in law and would be recommended dismissed as frivolous pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).

In addition, plaintiff's claims against the supervisory officials (John Ashcroft, Alberto Gonzales, and Warden Joe Young) would likewise be dismissed. Specifically, as plaintiff was advised in the court's memorandum order to amend, under *Bivens* supervisory officials cannot be held vicariously liable solely on the basis of their employer-employee relationship with an alleged tortfeasor because there is no doctrine of *respondeat superior* in a *Bivens* action. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998), *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir.1993). Rather, a supervisory official may be held liable when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or "if he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn*, 150 F.3d at 544. See also *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987). To prevail against a supervisory official, a plaintiff must show that such a defendant's actions, or inactions, if any, "caused" or was the "moving force" in causing a plaintiff harm. See *Monell v. Dep't of*

12

**VERBAL TAUNTING CLAIMS**

In addition to his medical care claims, plaintiff also alleged that defendant Smith verbally threaten and taunted him. As with his medical claims, plaintiff was instructed by the court that the allegations contained his original complaint did not state a claim upon which relief could be granted. Plaintiff failed to cure this deficiency in his amended pleadings. In this regard, 42 U.S.C. § 1997e(e) provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "'physical injury' required by § 1997e(e) 'must be more than *de minimus*, but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)). Plaintiff did not identify any specific physical injury resulting from his alleged "taunting" claims against defendant Smith. Thus, plaintiff's allegations against defendant Smith do not state a claim upon which relief can be granted as verbal threats and name-calling by prison guards do not amount to a constitutional violation. See *Bender v. Brumley,* 1 F.3d 271, 274 n. 4 (5th Cir. 1993); *Siglar v. Hightower*, 112 F. 3d 191, 193 (5th Cir.1997); *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir.2002);and, *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir.1995).

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights action in regard to his post-November 24, 2004 surgery claims be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available administrative remedies prior to the filing of suit as mandated by 42 U.S.C.

---

*Social Servs.*, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff has failed to state with particularity any facts showing that any of the supervisory officials named as defendants were "personally involved" in any of the alleged violations or that they implemented any policies which in themselves were a violation of any constitutional rights.

13

§1997e.

**IT IS FURTHER RECOMMENDED** that all other claims herein be **DISMISSED WITH PREJUDICE** as frivolous and as failing to state a claim.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Lake Charles, Louisiana, this 8th day of September, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE